IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KHADIJAH VIGIL,

Plaintiff,

v.

OFFICER DAHLQUIST,

Defendant.

Civil Action No.
1:21-cv-04339-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant Officer James Dahlquist's

Motion for Judgment on the Pleadings [ECF 16]. For the reasons stated below, the

motion is **GRANTED**.

### I.     Background

The Court treats the following well-pleaded facts as true. *Scott v. Taylor*, 405

F.3d 1251, 1253 (11th Cir. 2005). On July 3, 2019, around 10 pm, Plaintiff Khadijah

Vigil was working as an Uber driver on her way to pick up a passenger.[1] Dahlquist

was directing traffic in the area around where the passenger was waiting,[2] and

apparently directed Vigil away from that area. Vigil told Dahlquist that she

needed to go a different direction from where she was driving in order to pick up

---

[1]    ECF 9, ¶ 6; ECF 11.

[2]    ECF 9, ¶ 6.

the passenger.[3] In response, according to Vigil, Dahlquist "became enraged and handcuffed her left wrist and pulled her out of the car by her wrist."[4] This allegedly injured Vigil's hand and wrist, and caused her pain.[5]

Vigil filed suit, and later amended her complaint.[6] The Amended Complaint asserts a cause of action under Section 1983 for illegal arrest and use of excessive force, as well as claims under the Georgia Constitution and for assault and battery.[7] Dahlquist filed an Answer to the Amended Complaint,[8] attaching a copy of the incident report and body camera videos of the event.[9] He later moved for judgment on the pleadings based on qualified and official immunity.[10]

## II.    Legal Standard

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Such motions are evaluated under a standard similar to the one used for motions under Fed. R.

---

[3]    *Id.* ¶ 7.

[4]    *Id.* ¶ 8.

[5]    *Id.*

[6]    ECF 1 (Compl.); ECF 9 (Am. Compl.).

[7]    ECF 9.

[8]    ECF 10.

[9]    ECF 10-3; ECF 11.

[10]   ECF 16.

Civ. P. 12(b)(6) for failure to state a claim. The Court accepts the well-pleaded facts as true and views them in the light most favorable to the non-moving party. *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (citation omitted). Judgment is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hart v. Hodges*, 587 F.3d 1288, 1294 n.4 (11th Cir. 2009) (quoting *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). "If it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint, the district court should dismiss the complaint." *King v. Akima Global Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (citing *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)).

## III.   Discussion

### A.   Extrinsic Evidence

As a general rule, on a motion to dismiss if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See also Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (same). However, extrinsic evidence may be considered without converting the motion to one for summary judgment "if it is central to the plaintiff's claim and the authenticity of the [evidence] is not

challenged." *Adamson v. de Poorter*, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (citations omitted). *See also Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002) (applying incorporation-by-reference rule to motion for judgment on the pleadings and considering extrinsic evidence attached to answer); *Cantrell v. McClure*, 2018 WL 11170098, at *1 (N.D. Ga. Mar. 12, 2018) (considering video evidence on a motion for judgment on the pleadings).

### 1.    Incident Report

The incident report was prepared the day after Vigil's encounter with Dahlquist, and contains his narrative description of the alleged events.[11] Dahlquist wants the Court to rely on the details contained in the incident report to refute certain of the factual allegations in the Amended Complaint.[12] Vigil does not challenge the authenticity of the report, but argues that it would be improper for the Court to treat the contents of the report as true. The Court agrees.

The *existence* of the incident report is not central to Vigil's allegations. The *contents* of the report, on the other hand, would only be central to Vigil's claims if the Court treats them as true. That would be improper. The report reflects only Dahlquist's version of events, and, at this stage, the Court must construe the facts

---

[11]   ECF 10-3.

[12]   ECF 16-1, at 1–5.

in Vigil's favor. *Interline Brands*, 749 F.3d. at 965. The incident report is full of disputed facts, contradicts key aspects of Vigil's allegations, and contains hearsay.[13] "[W]e do not consider the events described in the police reports attached to [the defendant's] motion to dismiss. Given what [the plaintiff] alleged, we cannot say that the events referenced in the reports—even if central to [the plaintiff's] claim—are undisputed." *Wordley v. San Miguel*, 567 F. App'x 719, 720 (11th Cir. 2014) (per curiam).

Though not directly on point, in *Saunders v. Duke*, the Eleventh Circuit noted why courts should not consider the disputed contents of police incident reports:

> Where a civil rights plaintiff attaches a police report to his complaint and alleges that it is false . . . the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss. Otherwise, officers sued under § 1983 could just attach police reports referenced in a civil rights complaint to their motions to dismiss and ask courts to consider the contents of those reports even if they contradicted the allegations of the complaint. And that, as we have said, would be improper.

---

[13] *Compare* ECF 9 (alleging that Dahlquist was "enraged," and caused Vigil "excruciating pain") *with* ECF 10-3, at 5–6 (reporting that Vigil stated she was not injured during her interaction with Dahlquist).

766 F.3d 1262, 1270 (11th Cir. 2014). The Court sees no reason to distinguish *Sanders* and *Wordley* simply because the incident report here is attached to Dahlquist's answer rather than his motion for judgment on the pleadings.

### 2.    Body Camera Videos

Vigil objects to the Court's consideration of the body camera videos on the basis that they are not "documents" nor are they encompassed by the scope of Fed. R. Civ. P. 10(c). Rule 10 provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."[14] Regardless of the semantic distinctions Vigil attempts to make, it is clear that such extrinsic video evidence may be considered at the pleading stage under the law in the Eleventh Circuit. *Adamson*, 2007 WL 2900576, at *2; *Horsley*, 304 F.3d at 1134–35.

First, the videos capture the exact incident that is central to Vigil's claims—despite her baseless rejection of this point.[15] The videos depict Vigil's interaction with Dahlquist, which is the basis for each of her causes of action.[16] That she did not specifically refer to *videos* in the Amended Complaint is therefore of no moment. Second, Vigil does not contest the authenticity of the videos or suggest

---

[14]    ECF 21, at 5.

[15]    *Id.* at 6.

[16]    ECF 11.

that they are incomplete in any manner. Finally, the videos are public records under Georgia law. *See Media Gen. Ops., Inc. v. St. Lawrence*, 337 Ga. App. 428, 430 (2016) (citing O.C.G.A. § 50-18-70). The Court may take judicial notice of public records on a motion to dismiss. *Universal Express, Inc. v. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53–54 (11th Cir. 2006) (per curiam); *Cantrell*, 2018 WL 11170098, at *1.

In *Cantrell*, another judge from this district considered allegations of excessive force on a motion for judgment on the pleadings. 2018 WL 11170098, at *1. Dash camera videos captured the incident between the plaintiff and the defendant officer. *Id.* The court held that it was proper to consider the videos "in deciding the motion because [they] are referenced in Plaintiff's Complaint, their content is undisputed, and [they] are a matter of public record." *Id.* (citations omitted). Furthermore, the court explained that, if "the record includes a video which the parties concede is authentic and accurate . . . the court views 'allegations of the complaint as true only to the extent that they are not contradicted by video evidence.'" *Id.* (quoting *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017)).

On appeal, the Eleventh Circuit held that "[t]he district court's consideration of the undisputedly authentic footage was proper." *Cantrell v. McClure*, 805 F. App'x 817, 819 n.2 (11th Cir. 2020) (per curiam). Vigil argues this is dicta that

should be disregarded.[17] That's incorrect: The appellate decision relied on the "uncontroverted video evidence," *id.* at 820. But even if the statement were dicta, the Court sees no reason not to follow it here—particularly when Vigil has not raised any authenticity or completeness objection. *See also Johnson v. City of Atlanta*, 2022 WL 836300, at *1 (N.D. Ga. Mar. 21, 2022) (considering body and dashboard camera recordings attached to an answer in ruling on a motion for judgment on the pleadings).

### 3.  Medical Records

Vigil's opposition to Dahlquist's motion for judgment on the pleadings attaches several dozen pages of medical records from the treatment she sought for her alleged injuries.[18] Dahlquist objects to the Court considering these materials, despite the fact that he does not contest their authenticity.[19] Nor does Dahlquist provide any argument that the records are not central to Vigil's claim, relying simply on the bald assertion that the records are "extraneous."[20] Since the medical records meet the standard to be incorporated by reference, the Court considers

---

[17]   ECF 21, at 6.

[18]   *Id.* at 22–71.

[19]   ECF 24, at 10 n.8.

[20]   *Id.*

them to the extent they are not otherwise objectionable. *Adamson*, 2007 WL 2900576, at *2; *Horsley*, 304 F.3d at 1134–35.

## B.   Federal Claim

Section 1983 is a method used to vindicate existing federal rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Here, the Amended Complaint asserts that Vigil's Fourth Amendment rights were violated because of Dahlquist's alleged use of excessive force.[21]

### 1.   Reasonableness

Excessive force claims are subject to an "objective reasonableness" standard judged from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 388, 396. Dahlquist asserts that his actions were objectively reasonable. The Court agrees.

Vigil's pleading itself suggests that she refused to follow Dahlquist's instructions directing her in traffic.[22] The body camera videos show Vigil stopped in her car in a well-lit and populated area, repeatedly refusing to comply with

---

[21]   ECF 9, ¶ 2.

Although the pleading contains a claim for illegal arrest [*id.*], Vigil abandoned that cause of action [ECF 21, at 9 n.3 ("Plaintiff is not bringing an illegal arrest claim.")]. Nor is Vigil pressing an independent claim under the 14th Amendment. ECF 21, at 9 n.3.

[22]   ECF 9, ¶¶ 6–7.

Dahlquist's instructions to exit the vehicle. Dahlquist began to pull on Vigil's arm to get her out of the car, using no more force than necessary to accomplish that task. The recording does not depict Vigil's left arm at all times, but does show enough of Dahlquist's body to reflect the amount of force he used in attempting to remove Vigil from the car. In response to Dahlquist's efforts, Vigil flatly refused to exist the car, screamed "somebody help me," and began hysterically screaming and crying. Vigil repeatedly refused to comply with Dahlquist's instruction to step out of the car for at least 45 seconds. Vigil ultimately got out of the car under her own power—not because she was pulled by Dahlquist, although he was holding Vigil's left arm at the time. Dahlquist then handcuffed Vigil.[23]

It is clear that an officer's right "to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 22–27 (1968)); *see also Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (same). Determining the reasonableness of the officer's actions "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to

---

[23]   ECF 11.

the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The nature of any crimes Vigil might have committed were not severe based on the allegations in the Amended Complaint. However, it is clear that Vigil actively and demonstrably resisted arrest and refused to comply with Dahlquist's effort to handcuff and arrest her. A reasonable officer on the scene could reasonably have construed Vigil's conduct as creating a threat to safety.

Further, the application of de minimis force cannot alone support a claim for excessive force. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). The Eleventh Circuit has made clear that "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez*, 280 F.3d at 1351; *Nolin*, 207 F.3d at 1256 (noting that the "minor nature" of the plaintiff's injury "reflect[ed] that minimal force was used") (quoting *Gold v. City of Miami*, 121 F.3d 1442, 1446–47 (11th Cir. 1997)). The Amended Complaint alleges that Vigil suffered scratches, abrasions, and "excruciating pain" to her left hand and wrist as a result of this encounter.[24] Vigil's medical records reflect a pain level of 4 out of 10 within a few hours after the incident, normal sensation and strength in her left

---

[24]   ECF 9, ¶ 8.

hand, and no injury more severe than a sprained wrist with tenderness and swelling in her left hand.[25] She was prescribed 800 mg of ibuprofen.[26] The medical records and her own allegations reflect that Vigil's purported injuries were minor.

The Court concludes that a reasonable officer in Dahlquist's position would have considered the level of force he used as appropriate. Dahlquist's actions were thus objectively reasonable.

## 2.    Qualified Immunity

Even if Dahlquist's actions were not objectively reasonable, he asserts that Vigil's federal claim is barred by qualified immunity.[27] Under this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The parties do no dispute that

---

25    ECF 21, at 27, 29, 31.

26    *Id.* at 31.

27    ECF 16, at 8–22.

Dahlquist was acting within his discretionary authority.[28] Accordingly, the burden is on Vigil to show that Dahlquist is not entitled to immunity.

"To overcome the defense of qualified immunity, [a plaintiff] must show that the officer[ ]: (1) violated federal law (2) that was clearly established at the relevant time." *Pullen v. Osceola Cnty.*, 2021 WL 2461828, at \*4 (N.D. Ga. Jun. 17, 2021) (quoting *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1281 (11th Cir. 1998) (per curiam)). Because Vigil cannot show that Dahlquist violated clearly established law, the Court need not address the first prong of this test.

### a)  No Clearly Established Right

To be clearly established, "a reasonable official would [have to] understand that what he is doing violates that right." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citing *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1327 (11th Cir. 2006)). Binding precedent from the United States Supreme Court, Eleventh Circuit, and Georgia Supreme Court establish whether the law, at the time of the violation, provided "fair and clear warning" to a reasonable officer that his actions were unconstitutional. *Id*. A right can be clearly established by pointing to "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a

---

[28]   *Id.* at 9 n.4; ECF 21, at 9 n.2, 10 n.4.

broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* at *5 (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Rodriguez*, 280 F.3d at 1345 (quoting *Lassiter v. Ala. A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

"Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Id.* at 1013 (citing *Vinyard*, 311 F.3d at 1350). Courts should not, however, "define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam) (citation omitted). "What matters is whether the state of the law gave the defendants fair warning that their alleged conduct was unconstitutional." *Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019) (citing *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003)).

Although Vigil's opposition brief goes on at length about how qualified immunity should be determined,[29] she does not point to any clearly established law that would have made it plain to a reasonable officer that the constitution prohibits using the level of force necessary to remove a defiant and noncompliant suspect from a vehicle in order to effect an arrest. "In most cases, fact-specific precedents are necessary to give an officer fair warning of the applicable law." *Battiste v. Sheriff of Broward Cnty.*, 261 F. App'x 199, 202 (11th Cir. 2008). Nor can Vigil allege facts showing that Dahlquist's conduct was so egregious that it obviously violated some right—particularly in light of the video evidence.

Vigil relies on several Eleventh Circuit cases in an apparent attempt to create clearly established law.[30] But none of these cases support her contentions. In *Saunders v. Duke*, the Court of Appeals made clear that an officer is not entitled to qualified immunity when he "uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." 766 F.3d at 1264. As is clear from the descriptions above and the videos of the incident, Vigil was none of these things and the level of force Dahlquist used was neither gratuitous nor excessive under the circumstances. Similarly, in *Fils v. City of Aventura*, the court

---

[29]   ECF 21, at 9–13.

[30]   *Id.* at 15–18.

made clear that "[o]fficers may use force that is 'necessary in the situation at hand.'" 647 F.3d 1272, 1288 (11th Cir. 2011) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)). The plaintiff in *Fils* was not resisting arrest when the officer tasered him in the chest without warning. Vigil does not explain how this case clearly established any law that Dahlquist violated.

Another case cited by Vigil, *Stephens v. Giovanni*, 852 F.3d 1298 (11th Cir. 2017), involved claims against an officer who unleashed an unprovoked assault against the plaintiff, who was standing outside of a car and had not resisted arrest, raised his voice, or done anything threatening. Vigil fails to explain how this case establishes the unconstitutionality of the use of minimal force against a suspect who obdurately refuses to follow an officer's legal commands. The opinion in *Brand v. Casal*, 877 F.3d 1253 (11th Cir. 2017), was vacated in 2018—before Vigil's encounter with Dahlquist—so it cannot serve as clearly established precedent. *Coffin*, 642 F.3d at 1013 (citing *Amnesty Int'l USA v. Battle*, 559 F.3d 1170, 1184 (11th Cir. 2009)). Even if it could, it would not aid Vigil since the plaintiff in *Brand* was tased by an officer even though she had not been told she was under arrest and was not "actively resisting" or "attempting to escape." 877 F.3d at 1264. *Brand* does not clearly establish that pulling on a suspect's arm and wrist to get that

resisting person in a position to be handcuffed and arrested, using no more force than necessary, was unconstitutional in July 2019, or ever.

Finally, the facts in *Stryker v. City of Homewood* are entirely inapposite. That case involved an excessive force claim against an officer who, among other things, allegedly shot the plaintiff in the back with a taser and without warning, and then literally kicked him while he was down, laying on the ground. 978 F.3d 769, 771, 774 (11th Cir. 2020). Vigil has failed to carry her burden to show that Dahlquist is not entitled to qualified immunity.

### C.      State-Law Claims

Vigil has raised claims for abuse under the Georgia Constitution and for battery.[31] She asserts the Court has supplemental jurisdiction over these claims.[32] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Although Vigil's federal claims are being

---

[31]   ECF 9, ¶¶ 2, 14, 20.

[32]   *Id.* ¶ 3.

dismissed, the Court finds it appropriate to retain jurisdiction over her state-law claims because Dahlquist is entitled to official immunity. *Id.* § 1367(c)(3).

Official immunity under the Georgia Constitution protects state employees from liability in connection with the performance of their jobs. GA. CONST. art. I, § 2, ¶ IX(d). Police officers "can be liable for the negligent performance of ministerial acts within the scope of their authority [as well as] discretionary acts [if] committed with actual malice." *Marshall v. McIntosh Cnty.*, 327 Ga. App. 416, 420 (2014). *See also Kidd v. Coates*, 271 Ga. 33, 33 (1999) (indicating official immunity protects discretionary acts unless they are performed with "actual malice or with actual intent to cause injury in the performance of their official functions") (quoting GA. CONST. of 1983, art. I, § 2, ¶ IX(d)[33]). Vigil does not contend that Dahlquist was engaged in a ministerial act. Accordingly, she must plead that he acted with actual malice. She failed to do so.

Actual malice requires "a deliberate intention to do wrong"; this is "the intent to cause the harm suffered by the plaintiff[ ]." *Murphy v. Bajjani*, 282 Ga. 197, 203 (2007) (citation omitted). *See also Gates v. Khokhar*, 884 F.3d 1290, 1304 (11th Cir. 2018) (same). It requires "more than harboring bad feelings or ill will about

---

[33] This provision remains the same in the current Georgia Constitution.

another; rather, ill will must also be combined with the intent to do something wrongful or illegal." *Wyno v. Lowndes Cnty.*, 305 Ga. 523, 531 (2019) (cleaned up). Similarly, an "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive." *Id.* (quoting *Kidd*, 271 Ga. at 33).

Vigil argues that official immunity is a jury issue, but cites no case holding that immunity can never be decided as a matter of law.[34] And, in fact, a grant of official immunity may be appropriate at the pleading stage. *See, e.g., Hill v. Clayton Cnty.*, No. 1:21-cv-5300-TWT, 2022 WL 17558831, at *12 (N.D. Ga. Dec. 9, 2022) (concluding on a motion to dismiss that individual claims against a sheriff were barred by official immunity where the complaint alleged no facts showing the sheriff intended to cause the harm suffered by the plaintiff); *Johnson*, 2022 WL 836300, at *7–*8 (granting judgment on the pleadings to the defendant officer based on video recordings that were "devoid" of evidence of actual malice).

Other than a generic assertion that Dahlquist's actions showed "actual malice,"[35] Vigil has not alleged any facts that remotely suggest Dahlquist intended

---

34   ECF 21, at 18.

35   ECF 9, ¶ 16.

to injure her or to do anything illegal. Moreover, the contention that Dahlquist "became enraged" is belied by the videos, which depict Dahlquist remaining calm and controlled throughout the encounter—in sharp contrast to Vigil's hysterical behavior, screaming, crying, and repeated refusal to obey Dahlquist's simple commands.[36] *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Dahlquist used a minimal amount of force to handcuff Vigil and to try to remove her from the car, particularly in light of Vigil's defiance of his clear instructions.[37] In short, the allegation of malice is not plausible and is belied by the videos.

---

[36]   ECF 11.

[37]   *Id.*

## IV.    Conclusion

Dahlquist's Motion for Judgment on the Pleadings [ECF 16] is **GRANTED**. He is entitled to qualified immunity as to Vigil's federal claim and official immunity as to the state-law claims. The Clerk is therefore **DIRECTED** to enter judgment in favor of Dahlquist and **DISMISS** this case **with prejudice**.

**SO ORDERED** this 31st day of March, 2023.

Steven D. Grimberg
United States District Court Judge